UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUNG EIK HONG, YONG M. KOO, JOON G. KIM, KEVIN K. LEE, YOON S. KIM, DONG IL LIM, and HUN MIN PARK, individually and on behalf all other employees similarly situated,<br><br><div align=center>Plaintiffs,</div><br><div align=center>- against -</div><br>Quest International Limousine, Inc., Mangil Park, and James Park,<br><br><div align=center>Defendants.</div> | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs SUNG EIK HONG, YONG M. KOO, JOON G. KIM, KEVIN K. LEE, YOON S. KIM, DONG IL LIM, and HUN MIN PARK, by and through their attorneys, Hang & Associates, PLLC, upon their knowledge and belief, and as against Quest International Limousine, Inc., and MANGIL PARK, and JAMES PARK (together, "Defendants" or "Quest International"), allege as follows:

<div align=center>

**PRELIMINARY STATEMENT**

</div>

1.      This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206; New York Labor Law ("NYLL") Article 19 §§ 663, 652; NYLL Article 6 §§ 190, *et seq.*; NYLL Article 6 § 196-d and 12 New York Codes, Rules, and Regulations ("NYCRR") §§ 142-2.1 to recover unpaid minimum wages and overtime compensation, unlawfully retained gratuities, spread of hours premium, and damages arising out of failure to provide pay stubs and wage notifications owed to Plaintiffs for work performed for Defendants.

2.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

3.     In each year from 2016 to 2018, Defendants had gross annual sales of not less than $500,000.

4.     In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce.

5.     Plaintiffs allege that Defendants have failed and continue to fail to comply with FLSA and NYLL requirements due to its misclassification of drivers as independent contractors rather than employees.

6.     Plaintiffs are former drivers for Defendants.

7.     Plaintiffs worked for Defendants in excess of forty (40) hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked each week.

8.     At all relevant times, Defendants maintained a policy and practices of requiring Plaintiffs to work in excess of forty (40) hours per week without paying them minimum wage and overtime compensation required by federal and state laws.

9.     Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay, or for any additional overtime premium.

10.    Upon information and belief, Defendants have engaged in a policy and practices of unlawfully retaining Plaintiffs' gratuities.

11.     Upon information and belief, Defendants have engaged in a policy and practice of failing to provide Plaintiffs with pay stubs and wage notices.

12.     Plaintiffs have initiated this action seeking unpaid minimum wages, overtime compensation, and withheld gratuities that they were deprived of, plus interest, damages, attorneys' fees, and costs.

13.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

14.     Plaintiffs further seek damages and other appropriate relief for their claims of violations of common law and various New York Labor Laws including, without limitation, Quest International's (i) failure to pay minimum wages and overtime compensation; (ii) failure to pay spread of hours premium; (iii) unlawful withholding of gratuities intended for drivers but retained by Quest International; (iv) breach of contract; (v) unjust enrichment; (vi) conversion; and (vii) fraud and misrepresentation on behalf of themselves and other similarly situated aggrieved individuals who have worked for or who are currently working for Defendants.

## JURISDICTION AND VENUE

15.     Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the state claims.

16.     Venue for this action in the Southern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## PARTIES

17.     Plaintiff SUNG EIK HONG is citizen of New York State and resident of Queens County.  Plaintiff previously worked for Quest International as a driver.

18.     Plaintiff YONG M. KOO is citizen of New Jersey State and resident of Bergen County.  Plaintiff previously worked for Quest International as a driver.

19.     Plaintiff JOON G. KIM is citizen of New York State and resident of Queens County. Plaintiff previously worked for Quest International as a driver.

20.     Plaintiff KEVIN K. LEE is citizen of New Jersey State and resident of Bergen County.  Plaintiff previously worked for Quest International as a driver.

21.     Plaintiff YOON S. KIM is citizen of New Jersey State and resident of Bergen County.  Plaintiff previously worked for Quest International as a driver.

22.     Plaintiff DONG IL LIM is citizen of New York State and resident of Queens County.  Plaintiff previously worked for Quest International as a driver.

23.     Plaintiff HUN MIN PARK is citizen of New York State and resident of Queens County.  Plaintiff previously worked for Quest International as a driver.

24.     Upon information and belief, Quest International is a New York Corporation located at 330 W 38th Street, Suite 1408, New York, New York 10018, and is engaged in the luxury chauffeured transportation industry.

25.     Individual Defendants MANGIL PARK and JAMES PARK possess operational control over Quest International, possess an ownership interest in Quest International, and control significant functions of Quest International.

26.      Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

4

27.     Defendants possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals referred to herein.

28.     Therefore, for the above and other reasons, Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and other similarly situated employees') employers within the meaning of 29 U.S.C. § 201, et seq.

29.     In the alternative, Defendants constitute a single employer of Plaintiffs and all similarly situated individuals.

30.     Upon information and belief, Defendants MANGIL PARK and JAMES PARK operate Quest International Limousine, Inc. as either an alter ego of themselves, and/or fail to operate Quest International Limousine, Inc. as an entity legally separate and apart from their own selves, by, amongst other things:

    a. failing to adhere to the corporate formalities necessary to operate Quest International Limousine, Inc. as a corporation;

    b. defectively forming or maintaining operate Quest International Limousine, Inc. by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    c. transferring assets and debts freely as between all Defendants;

    d. operating Quest International Limousine, Inc. for their own benefit as the sole or majority shareholders;

    e. operating Quest International Limousine, Inc. for their own benefit and maintaining control over it as a closed corporation;

f.   intermingling assets and debts of their own with those of Quest International Limousine, Inc.;

g.   diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

h.   other actions evincing a failure to adhere to the corporate form, thereby allowing for breach of the corporate veil.

31.     Upon information and belief, at all times relevant, Defendants have been licensed by the New York City Taxi and Limousine Commission (NYCTLC), as a corporation engaged in the business of providing chauffeured limousine services.

32.     At all relevant times, the work performed by Plaintiffs and similarly situated employees was essential to the business operated by Defendants.

**<u>FLSA COLLECTIVE ACTION CLAIMS</u>**

33.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

34.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willing failing and refusing to pay them the required minimum wage and overtime wages, and willfully tailing to keep records required by the FLSA.

35.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## STATEMENT OF FACTS

*Plaintiff SUNG EIK HONG*

36.     Quest International employed Plaintiff SUNG EIK HONG as a driver from  2013 through December 26, 2018.

37.     During that period, Plaintiff SUNG EIK HONG worked for Quest International as one of its Sport Utility Vehicle ("SUV") drivers.

38.     On average, Plaintiff SUNG EIK HONG drove sixty (60) hours each week throughout the course of his employment relationship with Quest International.

39.     Quest International compensated Plaintiff SUNG EIK HONG on a bi-weekly basis. Initially, when Plaintiff SUNG EIK HONG first began driving for Quest International, he received 80% of the total fare, and Quest International received the remainder of 20% of the total fare.  In or around 2017, Quest International unilaterally changed the terms of Plaintiff SUNG EIK HONG's employment with Quest International and took 28% of the total fare.  After this unilateral change, Plaintiff SUNG EIK HONG received only 72% of the total fare.

40.     Quest International compensated Plaintiff SUNG EIK HONG around $3,750 per paycheck.

*Plaintiff YONG M. KOO*

41.      Quest International employed Plaintiff YONG M. KOO as a driver from  2016 through 2017.

42.     During that period, Plaintiff YONG M. KOO worked for Quest International as one of its SUV drivers.

43. On average, Plaintiff YONG M. KOO drove forty (40) hours each week throughout the course of his employment relationship with Quest International.

44. Quest International compensated Plaintiff YONG M. KOO on a bi-weekly basis. Initially, when Plaintiff YONG M. KOO first began driving for Quest International, he received 80% of the total fare, and Quest International received the remainder of 20% of the total fare. In or around 2017, Quest International unilaterally changed the terms of Plaintiff YONG M. KOO's employment with Quest International and took 28% of the total fare. After this unilateral change, Plaintiff YONG M. KOO received only 72% of the total fare.

45. Quest International compensated Plaintiff YONG M. KOO between $1,000 to $1,500 per paycheck.

*Plaintiff JOON G. KIM*

46. Quest International employed Plaintiff JOON G. KIM as a driver from  September 2018 through November 2018.

47. During that period, Plaintiff JOON G. KIM worked for Quest International as one of its SUV drivers.

48. On average, Plaintiff JOON G. KIM drove twenty-five (25) hours each week throughout the course of his employment relationship with Quest International.

49. Quest International compensated Plaintiff JOON G. KIM on a bi-weekly basis. Plaintiff JOON G. KIM received 72% of the total fare, and Quest International received the remainder of 28% of the total fare.

50. Quest International compensated Plaintiff JOON G. KIM around $650 each per paycheck.

*Plaintiff KEVIN K. LEE*

51.     Quest International employed Plaintiff KEVIN K. LEE as a driver from  September 2012 through 2016.

52.     During that period, Plaintiff KEVIN K. LEE worked for Quest International as one of its SUV drivers.

53.     On average, Plaintiff KEVIN K. LEE drove eighty (25) hours each week throughout the course of his employment relationship with Quest International.

54.     Quest International compensated Plaintiff KEVIN K. LEE on a bi-weekly basis. Plaintiff KEVIN K. LEE received 80% of the total fare, and Quest International received the remainder of 20% of the total fare.

55.     Quest International compensated Plaintiff KEVIN K. LEE around $1,100 per paycheck.

*Plaintiff YOON S. KIM*

56.     Quest International employed Plaintiff YOON S. KIM as a driver from around 2015 through 2016.

57.     During that period, Plaintiff YOON S. KIM worked for Quest International as one of its sedan drivers.

58.     On average, Plaintiff YOON S. KIM drove forty (40) hours each week throughout the course of his employment relationship with Quest International.

59.     Quest International compensated Plaintiff YOON S. KIM on a bi-weekly basis. Plaintiff YOON S. KIM received 80% of the total fare, and Quest International received the remainder of 20% of the total fare.

60.     Quest International compensated Plaintiff YOON S. KIM around $1,500 per paycheck.

*Plaintiff DONG IL LIM*

61.     Quest International employed Plaintiff DONG IL LIM as a driver from February 2017 through September 2018.

62.     During that period, Plaintiff DONG IL LIM worked for Quest International as one of its SUV drivers.

63.     On average, Plaintiff DONG IL LIM drove eighty (80) hours each week throughout the course of his employment relationship with Quest International.

64.     Quest International compensated Plaintiff DONG IL LIM on a bi-weekly basis. Plaintiff DONG IL LIM received 72% of the total fare, and Quest International received the remainder of 28% of the total fare.

65.     Quest International compensated Plaintiff DONG IL LIM around $2,000 per paycheck.

*Plaintiff HUN MIN PARK*

66.     Quest International employed Plaintiff HUN MIN PARK as a driver from 2013 through 2018.

67.     During that period, Plaintiff HUN MIN PARK worked for Quest International as one of its SUV drivers.

68.     On average, Plaintiff HUN MIN PARK drove twenty-five (25) hours each week throughout the course of his employment relationship with Quest International.

69.     Quest International compensated Plaintiff HUN MIN PARK on a bi-weekly basis. Initially, when Plaintiff HUN MIN PARK first began driving for Quest International, he received

80% of the total fare, and Quest International received the remainder of 20% of the total fare.  In or around 2017, Quest International unilaterally changed the terms of Plaintiff HUN MIN PARK's employment with Quest International and took 28% of the total fare.  After this unilateral change, Plaintiff HUN MIN PARK received only 72% of the total fare.

70.     Quest International compensated Plaintiff HUN MIN PARK around $3,000 per paycheck.

*Defendants' General Employment Practices*

71.     At all relevant times, Defendants' policy was to consider compensable working time only those hours in which the driver was driving with a passenger in the car.  As such, Plaintiffs did not receive any wages for the time spent preparing the cars for passengers, cleaning the cars, checking oil levels, tire pressure, and driving to the designated location to pick up customers.

72.     This compensable time amounted to approximately three to four hours of unpaid wages for each day worked.

73.     As such, Plaintiffs were not paid for a large portion of their shift, even though the entire shift constituted compensable work time.

74.     Defendants' practice of failing to pay Plaintiffs for all compensable time resulted in many unpaid hours.

75.     Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them proper regular rate of pay and/or overtime wages.

76.     Defendants' pay practices resulted in Plaintiffs (and all similarly situated employees), not receiving payment for all of their hours worked, so their effective rate of pay was reduced to below the minimum wage.

77.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA by neglecting to maintain accurate and complete timesheets and payroll records.

78.     Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for: (1) their full hours worked, and (2) for overtime due.

79.     Regarding Plaintiffs' gratuity, Defendants engaged in policy and practice of charging its customers a gratuity or service charge of approximately 10% to 20% per chauffeured ride.

80.     Although these customers reasonable believed that the entire gratuity charges would be paid to the drivers, Defendants typically retained all of these gratuities.

81.     Plaintiffs further allege that Defendants uniformly misclassifies all of its drivers as independent contractor when they are employees.

82.     There are numerous examples of the fact that Plaintiffs were employees (and not an independent contractor) of Defendants; these examples include but are not limited to the following:

    a.  Plaintiffs were not free to decline work;

    b.  Plaintiffs were not permitted to perform services any days and/or hours that they chose. Rather, Defendants exercised full control over Plaintiffs' hours; which fares they could take; which routes they could take; and which rate they could charge the customers;

    c.  Defendants provided Plaintiffs with a Manual & Policy and Procedures, whereby Defendants required Plaintiffs to:

    i.   show up for work at hours designated by Defendants;

    ii.   wear a uniform, consisting of a black solid suit with a button down dress shirt, and black dress shoes;

    iii.   refrain from wearing a down jacket or ski jacket during work;

    iv.   carry an umbrella with them at all times;

    v.   vacuum and wipe clean the interior of the vehicle they drove after every trip, and specifically restock the vehicle with clean glasses and napkins;

    vi.   wash the exterior of the vehicle(s) each day;

    vii.   be at pick-up locations 15 minutes prior to a customer's reservation time;

    viii.   get out of vehicle and open door for client every time, assist client with luggage, personal items, etc., and hand out business card to every client;

    ix.   adhere to specific airport standards when picking up and dropping off customers at the airport, including but not limited to having a Quest International sign with clients name written in large print with magic marker if a sign is not provided by Quest International for customer pick-ups from the airport;

83.    As a result of its misclassification, Defendants failed to provide Plaintiffs and other similarly aggrieved employees with itemized wage statements, minimum wages, and rest periods. Quest International also failed to keep accurate payroll records showing aggrieved employees' hours worked and wages paid.

### STATEMENT OF CLAIM

### COUNT I
### [VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA]

84.     Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

85.     At all relevant times to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

86.     Defendants had the power to hire and fire Plaintiffs (and the putative FLSA Class members), control the terms and conditions of their employment, and determine the rate and method of any compensation.

87.     At all times relevant to this action, Defendants were engaged in commerce or in tan industry or activity affecting commerce.

88.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

89.     Defendants intentionally, or otherwise, failed to pay Plaintiffs (and the putative FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

90.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

91.     Plaintiffs were damaged in an amount to be determined at trial.

<div align="center">

**COUNT II**
**[VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA]**

</div>

92.     Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

93.     Defendants intentionally, or otherwise in violation of the FLSA, failed to pay Plaintiffs (and the putative FLSA Class members) overtime compensation at rates of one and one-

half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

94.     Defendants' failure to pay Plaintiffs (and the putative FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

95.     Plaintiffs were damaged in an amount to be determined at trial.

### COUNT III
### [VIOLATIONS OF NEW YORK STATE LABOR LAW]

96.     Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

97.     Plaintiffs seek damages pursuant to New York State Labor Law for violations of the following sections:

      a.   retaining portions of gratuities intended for driver employees in violation of NYLL § 196-d;

      b.   failure to pay minimum wages in violation of NYLL § 220;

      c.   failure to pay overtime compensation in violation of NYLL § 190;

      d.   failed to pay one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 146-1.6;

      e.   failure to keep required payroll records in violation of NYLL § 220;

      f.   failure to pay minimum wages in violation of NYLL § 220.

98.     Defendants' failure to pay Plaintiffs minimum wage, overtime compensation, and spread of hours premium was willful within the meaning of NYLL § 663.

99.     Plaintiffs were damaged in an amount to be determined at trial.

**COUNT IV**
**[BREACH OF CONTRACT]**

100.    Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

101.    Defendants' conduct constitutes a breach of contract under state common law. Defendants have a contract with drivers to remit to them the total proceeds of all gratuities.

102.    At all relevant times, Defendants withheld and continues to withhold gratuities given by customers to Quest International drivers.

103.    Defendants' withholding of these gratuities constitutes a breach of contract.

104.    Plaintiffs were damaged in an amount to be determined at trial.

**COUNT V**
**[UNJUST ENRICHMENT]**

105.    Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

106.    Defendants unlawfully retained gratuities owed to the drivers.

107.    As a result, Defendants have been unjustly enriched through their retention of a portion of the gratuities owed to the drivers.

108.    Plaintiffs were damaged in an amount to be determined at trial.

**COUNT VI**
**[CONVERSION]**

109.    Plaintiffs repeat and reallege all preceding paragraphs above as though fully set forth herein.

110.    Defendants unlawfully took Plaintiffs' property, namely tips, without Plaintiffs' permission.

111.   As a result, Plaintiffs were harmed and are entitled to restitution for their full share of proceeds, as well as treble damages.

**COUNT VII**
**[FRAUD AND MISREPRESENTATION]**

112.   Defendants made a material representation of fact, that Plaintiffs would receive gratuities, which was untrue, which Defendants knew was an untrue statement at the time, with the intent to deceive, which Plaintiffs justifiably relied upon, causing Plaintiffs to incur damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

a)   designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

b)   on their first cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost;

c)   on their second cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost;

d)   on their third cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost;

e)   on their fourth cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost;

f)   on their fifth cause of action against Defendants, in an amount to be determined at

trial, plus interest, attorneys' fees, and cost;

g)   on their sixth cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost;

h)   on their seventh cause of action against Defendants, in an amount to be determined at trial, plus interest, attorneys' fees, and cost; and

i)   All such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Collective Action Members, demand a trial by jury on all questions of fact raised by the complaint.

Dated:  May 13, 2019                                     HANG & ASSOCIATES, PLLC.

    /S/ KEN MAENG
Ken H. Maeng, Esq.
136-20 38th Ave., Suite 10G
Flushing, New York 11354
Tel: 718.353.8588
kmaeng@hanglaw.com
*Attorneys for Plaintiffs*

# <u>EXHIBIT 1</u>

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*JUNG E. HONG*
Full Legal Name (Print)

Signature

3/29/19
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yong m Koo
_____
Full Legal Name (Print)

_____
Signature

4/24/19
_____
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

JOON G KIM
_____
Full Legal Name (Print)

_____
Signature

5/9  2019
_____
Date

## CONSENT TO SUE UNDER
### FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Kevin K Lee
Full Legal Name (Print)

Signature

04/24/19
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_YOON S Kim_
Full Legal Name (Print)

_[signature]_
Signature

_4-18-2019_
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Dong il Lim
_____
Full Legal Name (Print)

_____
Signature

4·21·19
_____
Date

CONSENT TO SUE UNDER
FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Quest International Limousine, Inc., Mangil Park, and James Park, and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid minimum wages, overtime wages, and unlawfully retained gratuities.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_____
Full Legal Name (Print)

*Park hun min*

_____
Signature

_____
Date

4-28-2019